Judson T. Pitts (9946)
HOOLE & KING
Attorney for Plaintiff
4276 South Highland Drive
Salt Lake City, Utah 84124
Email: jtp@hooleking.com
Telephone: (801) 272-7556
Fax:       (801) 272-7557

FILED
CLERK, U S. DISTRICT COURT

2005 FEB -4 P 4: 58

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| MARK NUTTALL,<br><br>      Plaintiff,<br><br>v.<br><br>THE FIRST NATIONAL BANK OF OMAHA, aka FIRST BANKCARD CENTER,<br><br>      Defendant. | Judge Dee Benson<br>DECK TYPE: Civil<br>DATE STAMP: 02/04/2005 @ 16:41:00<br>CASE NUMBER: 2:05CV00097  DB<br><br>Jury Demanded<br><br><br>Civil No.<br><br>Judge: |

Plaintiff, Mark Nuttall, complains of defendants, The First National Bank of Omaha, as follows:

## PARTIES

1.      Mark K Nuttall, (hereinafter "Nuttall"), the victim of repeated false credit reportings, is a natural resident of the United States of America and a resident of Davis County, State of Utah.

1

2.     The defendant, the First National Bank of Omaha, (hereinafter "FNBO") is believed to be a foreign corporation doing business in the State of Utah and also a furnisher of credit information to credit reporting agencies.

### JURISDICTION AND VENUE

3.     The plaintiff respectfully asserts that this Honorable Court's jurisdiction in this case arises under federal law, 15 U.S.C. §1681(p), as well as 28 U.S.C. 1331. Further, the matter in controversy exceeds $75,000.00, exclusive of costs and interest and the parties to these proceedings are citizens of different states, rendering jurisdiction under 28 U.S.C. 1332. Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. 1367.

5.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b) and (c), as the claims arose in and Defendant does business in Salt Lake City, State of Utah.

### STATEMENT OF FACTS

**Introduction**

The First National Bank of Omaha (FNBO) initially issued Richane Nuttall two accounts that Mr. J. Mark Nuttall was listed on as an authorized user in or about 1992. The Account ending in #3576 ("**Account A**") today carries a balance of approximately $6,412.00, and the account ending in # 6892 ("**Account B**") carries a current balance of approximately $9953.00.

**January 2005**

2

6.      In or about January, 2005, Plaintiff sought to re-finance a mortgage on his home and the lender, Mortgage America, contacted him to advise him that his Credit Reports from Experian f/k/a/TRW; Equifax, and Trans Union contained derogatory data.

7.      This report, prepared by Mortgage America, showed false information, including a seriously derogatory and false credit reporting by FNBO.

8.      The subject, false, fraudulent and negative FNBO account had been assigned for collection with Midland Credit Management, a debt collection entity.

9.      Plaintiff notified MIDLAND of the erroneous reporting by FNBO, and advised them, through a cease and desist letter, that the account was disputed; that FNBO had never produced proof of the validity of the debt, and that MIDLAND would be in violation of both FDCPA and FCRA laws if they persisted in collection attempts or reporting of the account.

10.      Plaintiff was contacted, through his attorney, by MIDLAND, and was advised that they would close the account and suspend collection activity. In reality, MIDLAND did not do so, but further reported and collected on the account.

### March-June, 2004

11.      Plaintiff applied for a line of credit with America First Credit Union, and was declined, in a letter dated June 22, 2004; One of the reasons listed in this letter for Nuttall's denial was, "Your obligations are excessive for your income."

12.      Plaintiff applied for "Blue Cash," from American Express in March of 2004, and was denied an account based upon his credit record; Reasons listed for denying him the credit

included "Account(s) not paid as agreed."

13.     Plaintiff requested a copy of his consumer report from Experian in Spetember of 2004, which showed that a report had been prepared and published to both America First Credit Union in June of 2004, and to American Express, in March of 2004; These reports contained the derrogatory information reported by FNBO as perpetuated by MIDLAND, attributing personal liability for the debts in dispute to the Plaintiff.

### April - November 2003

14.     Plaintiff applied for additional credit on his America First account, which was denied in whole or in part in a communication to him dated May 30, 2003, because his "obligations [were] excessive for his income," and because he had a "garnishment, attachment, foreclosure, repossession, collection action, or judgment against [him]."

15.     Plaintiff was denied an extension of credit from Household Bank, in a letter dated November 17, 2003 because of information obtained from a credit report ordered through Equifax.

16.     Plaintiff requested a higher line of credit on his Citibank Platinum Select account in November of 2003, but was denied specifically because of a "garnishment, attachment, foreclosure, collection action, or judgement" that was published on his Experian credit report.

17.     Nuttall received copies of his credit reports from Trans Union, Experian, and Equifax during the Spring of 2003, all of which carried inaccurate tradelines that showed Nuttall as either individually or jointly responsible for both Account A and Account B.

4

18.     On April 18, 2003, Nuttall disputed the accuracy of these accounts to all 3 major credit bureaus.

19.     Trans Union responded by May 24, 2003 claiming that although they did not think that any of the accounts they were reporting for the Plaintiff on behalf of FNBO were the disputed accounts, they seemingly arbitrarily retracted Account A, but confirmed liability for Account B.

20.     Equifax replied to the request by May 05, 2003, and was not reporting either of the accounts, but instead changed the Plaintiff's name to Mark Mark Nuttall, and outlined procedures for the Plaintiff to follow to officially change that name.

21.     Experian initially refused to honor the reinvestigation request, and after a series of 3 more letters and after compiling data to send them including Plaintiff's social security number, addresses for 5 years, 2 proofs of current address, birth certificate, full name etc.., they finally responded on June 24, 2003 and refused to delete the disputed accounts.

22.     These credit files show that all three of these agencies compiled and published reports to third parties during 2003 that carried FNBO's derrogatory and inaccurate information.

### 1992-2000

23.     In or about 1992, Richane Nuttall applied for and received credit card accounts from the defendant, the First National Bank of Omaha. On the application for the card, and without her husband's consent, she listed him as an authorized user of the account.

24.     From 1992 until 1994, the Plaintiff never used these cards/accounts.

5

25.    Due to irreconcilable differences, Nuttall and his wife, Richane, were granted a divorce in October of 1994, and went their separate ways.

26.    This decree established that any debts incurred following the date of divorce would be the sole and separate responsibility of incurring party.

27.    Following the divorce, Richane Nuttall had her accounts renewed, altered, and/or upgraded a number of times. Upon information and belief, new cardmember agreements were signed during this period that did not list Mr. Nuttall as an authorized user or as a joint for both Account A, as well as Account B.

28.    The balances in question for both Account A, as well as Account B, were incurred by Richane Nuttall during this period and prior to 1998.

29.    The Plaintiff had a reconciliation with Richane Nuttall in or about 1998, and they were remarried that year.

30.    In or about 2000, following a great deal of stress related to the high debt load she was carrying, Richane Nuttall filed for Bankruptcy, and received a discharge of both Account A, as well as Account B.

## 2002

31.    The Plaintiff first began receiving collection attempts against him for Accounts A & B following his wifes bankruptcy discharge.

32.    Nuttall first became aware that Accounts A&B were reported on his credit files shortly thereafter.

6

33.    In June of 2002, Nuttall requested a copy of his Experian credit report and discovered numerous tradelines that he wished to dispute - neither Account A or Account B was reporting at that time.

34.    Upon receiving his reinvestigation report from Experian in July of that year, however, Account B was reporting from the Defendant, and Experian reported that FNBO had first reported Account B to the Plaintiff's credit file in November 1994, one month following his divorce from Richane.

35.    During 2003 and 2004, the Plaintiff has requested no less than 4 reinvestigations from all three major Credit Reporting Bureaus, and all three continuously reported either Account A, Account B, or both in publishing their reports to third parties: At no time did they permanently remove or delete the accounts.

36.    During 2003 and 2004, the Plaintiff has received no less than 4 collection attempts from 6 separate third-party debt collectors that bought the rights or were assigned the rights to collect on Accounts A&B.

37.    The Plaintiff has sent letters to each collector, requesting valid proof of the debt, and only one of them responded to his communication: That collector could only produce a copy of a bank statement from FNBO that had the name J. Mark Nuttall on the document. None could produce a signed cardmember agreement, or a document that created legal liability for the Plaintiff towards the account.

38.    On March 30, 2004, Mr. Nuttall disputed both Accounts A&B in writing with the

7

Defendant, requesting that the defendant provide proof of the claim,and asking the Defendant to cease and desist their collection attempts.

39.     The Defendant has never responded.

40.     On April 16, 2003, Mr. Nuttall disputed both Accounts A&B in writing with the Defendant, requesting that the defendant provide proof of the claim,and asking the Defendant to cease and desist their collection attempts.

41.     The Defendant never responded.

42.     On August 02, 2002, Mr. Nuttall disputed both Accounts A&B in writing with the Defendant, requesting that the defendant provide proof of the claim,and asking the Defendant to cease and desist their collection attempts.

43.     The Defendant never responded.

### Additional Facts

44.     Plaintiff's credit, credit reports and ratings were exceptional and excellent prior to the events described herein.

45.     False data and false credit scores and risk factors/denial codes have been repeatedly  generated and provided by credit reporting agencies to third party subscribers to their services, as shown in the inquiry logs in the credit reports of and concerning plaintiff due to the false reportings of FNBO.

46.     The false reportings caused plaintiff to suffer credit denials, embarrassment, mental anguish, inconvenience and other pecuniary and non-pecuniary damages

8

47.    Despite diligent and costly efforts by Plaintiff, his credit reports continued to contain the false and damaging information.

48.    Plaintiff is a consumer.

49.    Plaintiff has suffered damages due to the tortious and illegal actions or inactions directed at Plaintiff by Defendant.

50.    FNBO is a debt collector, under state and federal debt collection practices laws, and are also "users" and "furnishers" of credit information as discussed in the Fair Credit Reporting Act.

51.    FNBO failed to employ reasonable procedures to reinvestigate disputed collection items which plaintiff plainly disputed as fraud-related and which did not belong to him.

FIRST CLAIM FOR RELIEF<br>NEGLIGENCE

52.    Defendant owed duties of reasonable care to plaintiff.

53.    Defendant failed to exercise reasonable care and prudence in the handling and preliminary evaluation of the fraud account, each subsequent reporting and re-reporting of said account, the handling and reinvestigation of data about plaintiff, all made the subject of this Lawsuit, and which consequently caused damaged plaintiff.

SECOND CLAIM FOR RELIEF<br>DEFAMATION

54.    Defendants recklessly, maliciously and/or intentionally, published and

9

disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters asserted

55.    Defendants' publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress and mental anguish to plaintiff.

56.    Defendant was notified of inaccuracies by plaintiff however, the defendant continued to issue and/or publish report(s) to third parties which contained inaccurate information about Plaintiff and even changed subscriber names to re-post data to another credit reporting agency's system in the hope of sustaining the false reporting about plaintiff and leveraging a settlement with plaintiff.

57.    Defendant has, with willful intent to injure and/or maliciously, defamed Plaintiff.

### THIRD CLAIM FOR RELIEF
### INJUNCTIVE RELIEF

58.    Defendant, through its actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

59.    Plaintiff is entitled to an order commanding the defendant to reinvestigate and correct the credit reportings and other information maintained and published about plaintiff.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 1681s-2[b]

60.    Further, consumer reporting agencies also advised the defendant, furnisher-

subscriber [collector], that plaintiff disputed the fraud accounts and false credit reportings.

61.     Despite receipt of the same dispute a number of times, the defendant, furnisher-subscriber [collector],  failed to respond with truthful information, failed to acknowledge the disputes and/or repeatedly reported the false, derogatory information to the consumer reporting agencies in violation of the Act.

62.     According to the national consumer reporting agencies' reports, the defendant, furnisher-subscriber [collector], continued to falsely report about plaintiff.

63.     The defendant, furnishers-subscriber [collectors], have likewise willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2[b], by failing to respond to reinvestigation requests and failing to supply accurate and truthful information.

64.     Rather, the defendant, furnisher-subscriber [collectors], continued to report false and inaccurate information and failed to retract, delete and suppress false and inaccurate information it reported about the plaintiff, as described more fully herein.

65.     The defendant, furnisher-subscriber [collectors], failed to conduct an investigation or reinvestigation with respect to consumer credit data it reported and repeatedly re-reported about Plaintiff.

66.     The defendant, furnisher-subscriber [collectors], failed to review all relevant and pertinent information provided to it by the consumer reporting agencies.

67.     The defendant, furnisher-subscriber [collectors] failed to acknowledge and

11

respond with truthful information in response to plaintiff's disputes and to advise the consumer

reporting agencies of receipt of such disputes and complaints with regard to consumer credit data

it had been reporting and re-reporting about plaintiff.

68.    The defendant, furnisher-subscriber [collector], were aware that their

reporting and activitie would [and will] damage plaintiff and her ability to enjoy life and utilize

the credit rating and reputation property rights she secured by honoring her obligations to all of

her creditors.

FIFTH CLAIM FOR RELIEF
VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

69.    Defendant have violated section 807 of the FDCPA in multiple respects.

70.    Defendant used false and deceptive representations and means to try to collect

monies from plaintiff.

71.    Defendant made false and deceptive representations about the character and

status of the alleged debt.

72.    Defendant threatened to take and did take unlawful actions against plaintiff.

73.    Defendant communicated false information to credit reporting agencies while

knowing that the information was false.

74.    Defendant failed to report the disputed debt as contested and disputed by plaintiff.

**ADDITIONAL ALLEGATIONS**

75.    The above and foregoing actions, inactions and fault of defendant, as to each and

every count, have proximately caused a wide variety of damages to plaintiff.

12

76.    Defendants' false credit reporting about plaintiff have been a substantial factor in causing credit denials and other damages.

77.    Defendant has negligently and/or willfully violated various provisions of the Fair Credit Reporting Act and are thereby liable unto plaintiff.

78.    Defendant is liable unto plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury.

## REQUEST FOR EXEMPLARY/PUNITIVE DAMAGES

Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the Fair Credit Reporting Act.

## REQUEST FOR COSTS OF LITIGATION AND ATTORNEYS' FEES

Plaintiff respectfully requests that this Honorable Court award plaintiff his litigation

13

expenses and other costs of litigation and reasonable attorneys' fees incurred in this litigation, in accordance with the provisions of the Fair Credit Reporting Act [FCRA].

### PRAYER FOR RELIEF

WHEREFORE, Mr. Nuttall prays for judgment as follows:

1.    For all reasonable actual and compensatory damages sustained by Plaintiff including but not limited to out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security in amounts to be proven at trial;

2.    For punitive/exemplary damages, in an amount to be awarded at trial;

3.    For attorney's fees, expert witness fees and costs incurred in pursuing this action; and for other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid;

4.    That this Honorable Court order the information furnishers-subscribers-defendants, **FNBO**, which supply information to such agencies, made defendants herein, to reinvestigate and correct the credit report(s), data emanations, and credit histories of and concerning Plaintiff or any of plaintiff's personal identifiers.

5.    For such additional, general and equitable relief as the Court deems just and appropriate.

DATED this ___ day of February, 2005

14

HOOLE & KING, L.C.

_____
Judson T. Pitts